## VI. CONCLUSION

We find no merit to Sellers' assigned errors. His assertions of ineffective assistance of trial and appellate counsel failed to establish any prejudice resulting from the alleged deficiencies of his counsel. And his claim of instructional error regarding the premeditated murder theory of first degree murder was not presented as a claim of ineffective assistance of counsel before the district court. We affirm the denial of postconviction relief without an evidentiary hearing.

AFFIRMED.

WRIGHT, J., participating on briefs.

————————

ABIGAIL K. DESPAIN, APPELLEE, V.
WILLIAM E. DESPAIN, APPELLANT.
___ N.W.2d ___

Filed February 6, 2015.    No. S-13-1133.

1. **Judgments: Appeal and Error.** An appellate court determines jurisdictional questions that do not involve a factual dispute as a matter of law.
2. **New Trial: Appeal and Error.** Regarding motions for new trial, an appellate court will uphold a trial court's ruling on such a motion absent an abuse of discretion.
3. **Divorce: Property Division: Appeal and Error.** In actions for the dissolution of marriage, the division of property is a matter entrusted to the discretion of the trial judge, whose decision will be reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion.
4. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
5. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
6. **Jurisdiction: Time: Notice: Appeal and Error.** To vest an appellate court with jurisdiction, a party must timely file a notice of appeal.
7. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and interpretation will not be used to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
8. **Divorce: Property Division.** Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital

property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

9.    ____: ____. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.

Appeal from the District Court for Saunders County: Mary C. Gilbride, Judge. Affirmed as modified.

Mark A. Steele, of Steele Law Office, for appellant.

John H. Sohl for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Abigail K. Despain, the appellee, and William E. Despain, the appellant, were married in June 2012, and Abigail filed her complaint for the dissolution of marriage in the district court for Saunders County in August 2012. After trial, the district court filed its decree of dissolution of marriage including orders regarding property division. William appeals.

The issues in this appeal are whether William's appeal was timely and whether the district court correctly calculated the division of property. We determine that although William's motion for new trial was filed before the entry of judgment, it was filed after announcement of the decision. Under Neb. Rev. Stat. § 25-1144.01 (Reissue 2008), it is treated as filed after the entry of judgment. And, thus, the motion was effective and the appeal is timely. We further determine that the district court erred in that portion of the decree which divided the property, and we modify the decree as indicated below. We affirm as modified.

## STATEMENT OF FACTS

Abigail and William were married on June 23, 2012. On August 27, Abigail filed her complaint for the dissolution

of the marriage. No children were born to the parties during the marriage.

Prior to their marriage, Abigail and William purchased a house together. The parties sold the house after Abigail had filed for divorce but prior to trial. The net sale proceeds were $12,453.34, and the parties divided the proceeds equally prior to trial, each receiving $6,226.67.

A trial was held on June 10, 2013. Abigail and William each testified and presented evidence at trial. As noted, at the time of trial, Abigail and William had already divided the proceeds from the sale of the house. According to the evidence, they had no joint indebtedness.

Abigail presented evidence that in purchasing the house with William, she had used her premarital funds to pay the earnest deposit of $1,000, the closing costs of $4,422, and the water deposit of $150. Abigail stated that in total, she had used $5,572 of her premarital funds to help purchase the house. Abigail also presented evidence that without her knowledge at the time, the parties had received a refund in the amount of $70 for the overpayment of closing costs, and that William had kept the $70.

William stated at trial that he had made repairs and improvements to the house using his premarital funds in the amount of $3,509.92. The district court did not credit this claim, and William does not assign error to this finding on appeal.

The record shows that after trial, on August 14, 2013, the district court sent the parties an unsigned document captioned "Journal Entry" (unsigned journal entry) containing the substance of its decision and ordered counsel for Abigail to prepare a dissolution decree. This unsigned journal entry specifically states that unsigned copies were sent to counsel for each party on August 14.

In the unsigned journal entry, regarding "property division," the court found that Abigail is entitled to the return of premarital funds used to purchase the house, in the amount of $5,422; the return of the water deposit, in the amount of $150, which was paid from her premarital funds; and one-half of the overpayment of closing costs, in the amount of $35. The unsigned

journal entry states that William shall make an equalization payment which flows from those findings. The unsigned journal entry states:

> [Abigail's attorney] shall prepare the decree herein. It shall be reviewed by [William's attorney] and presented to the court for signature not later than September 16, 2013. The decree shall append the appropriate calculation of the division of the estate in accordance with paragraph 2. In order to avoid confusion as to appeal time, [t]his order shall be forwarded to counsel both unsigned and unfiled. A signed copy will be filed contemporaneously with the entry of the decree.

Following the distribution of the unsigned journal entry on August 14, 2013, but before the decree was filed on October 21, William filed a motion for new trial on October 16 in which he claimed that the district court's decision regarding division of property failed to recognize the division of proceeds from the sale of the home which had occurred and that an equalization payment based on this failure is erroneous.

On October 21, 2013, the district court filed its "Decree of Dissolution of Marriage," which included orders reflecting its provisions. In the dissolution decree, the court stated that Abigail and William's marriage was irretrievably broken and should be dissolved. Abigail's birth name was restored to her. Regarding the division of property, the decree stated:

> [Abigail] should be entitled to the return of premarital funds used to purchase the marital home in the amount of $5,422.00. [Abigail] should be entitled to the return of the water deposit in the amount of $150.00 which was paid from premarital funds, less any amounts deducted for water usage during the marriage. [Abigail] should be entitled to one half of the overpayment of closing costs in the amount of $35.00.

In the decree, the court ordered William to pay Abigail $5,607 in order to equalize the division of property. The court did not award alimony to either party and stated that each party shall be responsible for his or her own attorney fees and court costs.

The court signed a copy (signed journal entry) of the unsigned journal entry first distributed on August 14, 2013, on October 18 and filed it on October 21 along with the decree.

On November 27, 2013, the court filed its order overruling William's motion for new trial. The order states in its entirety: "NOW ON this 27th day of November, 2013, this matter comes before the Court on [William's] Motion for New Trial. The Court finds that the Decree has been signed. The Motion for New Trial is overruled."

On December 26, 2013, William filed his notice of appeal from the November 27 order overruling his motion for new trial.

## ASSIGNMENT OF ERROR

William claims, restated, that the district court erred when it overruled his motion for new trial in which he claimed that the court erred in its method of calculating the equalization payment that William owes Abigail.

## STANDARDS OF REVIEW

[1] An appellate court determines jurisdictional questions that do not involve a factual dispute as a matter of law. *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014).

[2] Regarding motions for new trial, we will uphold a trial court's ruling on such a motion absent an abuse of discretion. *First Express Servs. Group v. Easter*, 286 Neb. 912, 840 N.W.2d 465 (2013).

[3,4] In actions for the dissolution of marriage, the division of property is a matter entrusted to the discretion of the trial judge, whose decision will be reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Plog v. Plog*, 20 Neb. App. 383, 824 N.W.2d 749 (2012). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 849 N.W.2d 523 (2014).

ANALYSIS

Abigail contends that William's motion for new trial, filed before entry of the decree, was a nullity and that as a result, the notice of appeal was untimely and the appeal should be dismissed. William claims that the district court erred in overruling his motion for new trial because the district court's method of calculating the equalization payment was incorrect. We conclude that William's motion for new trial was an effective filing pursuant to § 25-1144.01 and that the appeal is timely. We further determine that the district court erred in its method of calculating the equalization payment owed by William to Abigail.

*William's Motion for New Trial.*

[5,6] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. See *Huskey v. Huskey*, 289 Neb. 439, 855 N.W.2d 377 (2014). To vest an appellate court with jurisdiction, a party must timely file a notice of appeal. *Meister v. Meister*, 274 Neb. 705, 742 N.W.2d 746 (2007). A party must file a notice of appeal within 30 days of the judgment, decree, or final order from which the party is appealing. See Neb. Rev. Stat. § 25-1912(1) (Reissue 2008). A motion for a new trial, however, terminates the time in which a notice of appeal must be filed. See § 25-1912(3). If the court denies the motion for new trial, and assuming that the motion for new trial is an effective filing and not a nullity, the party has 30 days from the entry of the order denying the motion to file a notice of appeal. *Meister v. Meister, supra*.

Section 25-1912, upon which the foregoing discussion is based provides:

(1) The proceedings to obtain a reversal, vacation, or modification of judgments and decrees rendered or final orders made by the district court, including judgments and sentences upon convictions for felonies and misdemeanors, shall be by filing in the office of the clerk of the district court in which such judgment, decree, or final

order was rendered, within thirty days after the entry of such judgment, decree, or final order, a notice of intention to prosecute such appeal signed by the appellant or appellants or his, her, or their attorney of record and, except as otherwise provided in sections 25-2301 to 25-2310, 29-2306, and 48-641, by depositing with the clerk of the district court the docket fee required by section 33-103.

. . . .

(3) The running of the time for filing a notice of appeal shall be terminated as to all parties (a) by a timely motion for a new trial under section 25-1144.01, (b) by a timely motion to alter or amend a judgment under section 25-1329, or (c) by a timely motion to set aside the verdict or judgment under section 25-1315.02, and the full time for appeal fixed in subsection (1) of this section commences to run from the entry of the order ruling upon the motion filed pursuant to subdivision (a), (b), or (c) of this subsection.

Section 25-1144.01, mentioned in § 25-1912, provides:

A motion for a new trial shall be filed no later than ten days after the entry of the judgment. A motion for a new trial filed after the announcement of a verdict or decision but before the entry of judgment shall be treated as filed after the entry of judgment and on the day thereof.

William filed his motion for new trial before the court filed the dissolution decree, and the decree is the judgment in this dissolution case. See *Rice v. Webb*, 287 Neb. 712, 844 N.W.2d 290 (2014). Abigail contends that William's motion for new trial filed before entry of the judgment was a nullity and that therefore, the running time for filing a notice of appeal from the decree did not terminate awaiting disposition of a new trial motion. According to Abigail, the notice of appeal was filed more than 30 days after entry of judgment and was untimely. Applying § 25-1144.01, we conclude the appeal was timely, and we reject Abigail's contention that we lack jurisdiction.

The relevant dates for our analysis are as follows:
- June 10, 2013: trial conducted.
- August 14, 2013: unsigned journal entry sent to parties' attorneys.
- October 16, 2013: William's motion for new trial filed.
- October 21, 2013: dissolution decree filed.
- October 21, 2013: signed journal entry filed.
- October 21, 2013: William's motion for new trial treated as filed under § 25-1144.01.
- November 27, 2013: order overruling William's motion for new trial filed.
- December 26, 2013: William's notice of appeal filed.

[7] The plain terms of § 25-1144.01 are dispositive of the jurisdictional issue. Section 25-1144.01 as quoted above had been amended in 2004 by 2004 Neb. Laws, L.B. 1207, to add the second sentence. As noted above, the second sentence of § 25-1144.01 provides: "A motion for a new trial filed after the announcement of a verdict or decision but before the entry of judgment shall be treated as filed after the entry of judgment and on the day thereof." Statutory language is to be given its plain and ordinary meaning, and interpretation will not be used to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Weber v. North Loup River Pub. Power*, 288 Neb. 959, 854 N.W.2d 263 (2014).

The 2004 amendment to § 25-1144.01 was apparently adopted in reaction to this court's decision in *Macke v. Pierce*, 263 Neb. 868, 643 N.W.2d 673 (2002). In *Macke*, we determined that under the version of § 25-1144.01 in effect prior to the 2004 amendment, a motion for new trial was effective and timely only if it was filed within 10 days after the entry of a judgment. Thus, under *Macke*, a motion for new trial filed before the entry of a judgment was a nullity, as was the trial court's ruling on such a motion for new trial. Under *Macke*, such a motion for new trial did not terminate the time for taking an appeal. However, under the 2004 amendment, a motion for new trial filed after the announcement of the decision but before the entry of the judgment is no longer a nullity.

As we have noted, the court distributed the unsigned journal entry on August 14, 2013, containing its substantive decision, and it further provided:

> [Abigail's attorney] shall prepare the decree herein. It shall be reviewed by [William's attorney] and presented to the court for signature not later than September 16, 2013. The decree shall append the appropriate calculation of the division of the estate in accordance with paragraph 2. *In order to avoid confusion as to appeal time, [t]his order shall be forwarded to counsel both unsigned and unfiled. A signed copy will be filed contemporaneously with the entry of the decree.*

(Emphasis supplied.)

We view the copies of the August 14, 2013, unsigned journal entry that were sent to the parties as the court's "announcement of a . . . decision" as that expression is used in § 25-1144.01. Hence, William's motion for new trial filed after the announcement of the decision "but before the entry of judgment shall be treated as filed after the entry of judgment and on the day thereof." See § 25-1144.01. William's motion for new trial was effective. In sum, William's motion for new trial was treated as having been filed after judgment on October 21, the same date the decree was filed, and was properly before the district court. Time to appeal from the decree was terminated until the district court ruled on the motion for new trial. The notice of appeal filed within 30 days after the ruling on the motion for new trial was timely.

For completeness, we note that William suggests on appeal that the district court failed to properly consider his motion for new trial, perhaps because the court's order of denial was brief. The district court's November 27, 2013, order overruling the motion for new trial stated in its entirety: "NOW ON this 27th day of November, 2013, this matter comes before the Court on [William's] Motion for New Trial. The Court finds that the Decree has been signed. The Motion for New Trial is overruled." As we view the order, the court considered the motion for new trial and found it to be without merit. The language in the order signaled the court's recognition that the motion for new trial had been filed before entry of the decree

but, by implicit application of § 25-1144.01, that the decree had been signed and that the court could therefore properly proceed to the merits of the motion for new trial. We find no error in this procedure.

*Equalization Payment Ordered*
*by the District Court.*

William claims that the district court erred in the method it employed to calculate the equalization payment owed by William to Abigail and that the court erred when it overruled his motion for new trial on this basis. We agree with William.

Regarding motions for new trial, we will uphold a trial court's ruling on such a motion absent an abuse of discretion. *First Express Servs. Group v. Easter*, 286 Neb. 912, 840 N.W.2d 465 (2013). As explained in more detail below, we determine that the district court erred in the method of calculating the equalization payment, and accordingly, we determine that the district court abused its discretion when it overruled William's motion for new trial challenging the equalization calculation. In particular, in this case, the court ordered William to pay Abigail an equalization payment of $5,607, whereas we determine it should have ordered him to pay $2,856.

[8,9] Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. See, *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008); *Plog v. Plog*, 20 Neb. App. 383, 824 N.W.2d 749 (2012). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Plog v. Plog, supra*.

In calculating the amount of the equalization payment, the district court first determined the parties' total property and

then divided the total property equally between the two parties. In an attempt to equalize the distribution, the court then ordered William to pay Abigail $5,607, which represented Abigail's premarital funds used to purchase the house, Abigail's premarital funds used to pay the water deposit, and half of the overpayment of closing costs returned by the bank. Because Abigail's evidence showed that the closing costs were paid by Abigail's premarital funds, the district court erred and should have ordered that the entire $70 refund be set off to Abigail as premarital property, and our calculations in the remainder of this opinion treat the $70 accordingly. See *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006) (stating that burden of proof to show property is premarital remains with person making claim in dissolution proceeding).

The district court erred in two fundamental ways in calculating the equalization payment. First, the district court failed to account for the fact that the parties had already divided and distributed the proceeds from the sale of the house during the pendency of the dissolution proceedings. The sale proceeds amounted to $12,453.34, and after dividing the proceeds equally, Abigail and William had each received $6,226.67 before trial. The district court erred by not recognizing this division and distribution when it calculated the equalization payment.

Second, the court failed to properly follow the initial step of the three-step process set forth above. After determining the parties' total property, which amounted to $12,523.34, the court should have identified and separated the marital assets and nonmarital assets. Then, the court should have subtracted and set aside to Abigail her premarital funds used for the downpayment on the house, the closing costs, and the water deposit, and the $70 refund, all of which totaled $5,642, from the total property of $12,523.34, leaving $6,881.34 as the marital assets to be divided between the parties, with each receiving $3,440.67. By failing to properly follow this process, and failing to recognize the prior distribution of the house sale proceeds, the court erred in calculating the amount owed by William to Abigail in order to equalize division of the estate.

After equalization, Abigail should have received $9,082.67 (consisting of premarital property equaling $5,642 plus one-half of the marital estate equaling $3,440.67), and William, with no premarital property, should have received one-half of the marital estate (equaling $3,440.67). Because the house sale proceeds were equally split before trial, Abigail and William had each already received $6,226.67 attributable to the sale of the house. And because William had already received the $70 closing cost refund, his receipts before trial totaled $6,296.67. To award Abigail the $9,082.62 she was due, and to award William the $3,440.67 to which he was entitled, the court should have ordered William to pay Abigail $2,856 instead of $5,607 as ordered.

CONCLUSION

We conclude that under § 25-1144.01, William's motion for new trial filed after the district court's announcement of the decision but before its entry of the decree was an effective filing and that the appeal is timely. With respect to property division, we determine that the district court erred in the method it employed when it calculated the equalization payment owed by William to Abigail. We therefore affirm the district court's dissolution decree but modify the portion of the decree that ordered William to pay Abigail $5,607 and instead order that William pay Abigail $2,856.

AFFIRMED AS MODIFIED.

CASSEL, J., concurring.

INTRODUCTION

I join the court's opinion, but write separately to emphasize three points. First, the word "announcement," as it is used in the current statutes governing appeals and motions for new trial, is not synonymous with the word "pronouncement" as it was used in the former statute defining rendition of judgment. Second, a premature motion for new trial is still possible despite the enactment of the savings clause. Finally, because "announcement" can take many forms, counsel relying upon the statutory savings clause for a motion for new trial should be sure that the "announcement" appears in the record.

## "ANNOUNCEMENT" VERSUS
## "PRONOUNCEMENT"

Before 1999, "rendition" of a judgment was defined as a court's or judge's two-part act of "*pronouncing* judgment, accompanied by the making of a notation on the trial docket."[1] And although "entry" of judgment required the court clerk to spread the relief upon the court's journal,[2] the time for appeal began to run with "rendition,"[3] and not from "entry" unless there was no "rendition." And the first part of "rendition"—the "pronouncement"—was well settled in our case law. Pronouncement occurred when the court or judge made an oral pronouncement of judgment in open court.[4]

But the 1999 Legislature refined "rendition" as the court's or judge's act of "making and signing a written notation."[5] Thus, an oral pronouncement in open court was no longer part of the definition of "rendition" of judgment. At the same time, the Legislature amended the appeals statute so that the time for appeal would run from the "entry" of judgment rather than its "rendition."[6] And it redefined "entry" as the court clerk's act of "plac[ing] the file stamp and date" upon the judgment.[7]

The 1999 Legislature also introduced the first savings clause into our general appeal statute.[8] This savings clause treated a notice of appeal filed after the "*announcement*" of a decision, but before the entry of the judgment, as having been filed after the entry of judgment and on the date of entry.[9]

Although the 1999 Legislature failed to add an equivalent savings clause regarding motions for new trial, the 2004

---

[1] See Neb. Rev. Stat. § 25-1301(2) (Reissue 1989) (emphasis supplied).

[2] See § 25-1301(3).

[3] See Neb. Rev. Stat. § 25-1912(1) (Reissue 1989).

[4] See, e.g., *Tri-County Landfill v. Board of Cty. Comrs.*, 247 Neb. 350, 526 N.W.2d 668 (1995).

[5] § 25-1301(2) (Reissue 2008). See 1999 Neb. Laws, L.B. 43, § 3.

[6] See 1999 Neb. Laws, L.B. 43, § 8.

[7] § 25-1301(3). See 1999 Neb. Laws, L.B. 43, § 3.

[8] See 1999 Neb. Laws, L.B. 43, § 8.

[9] See Neb. Rev. Stat. § 25-1912(2) (Supp. 1999) (emphasis supplied).

Legislature remedied that omission.[10] Thereafter, and currently, the savings clause states that "[a] motion for a new trial filed after the announcement of a verdict or decision but before the entry of judgment shall be treated as filed after the entry of judgment and on the day thereof."[11]

The change from "pronouncement" to "announcement" was not accidental or meaningless. The Nebraska Court of Appeals has recognized that "announcement" can come orally from the bench, from trial docket notes, from file-stamped but unsigned journal entries, or from signed journal entries which are not file stamped.[12] And the Court of Appeals acknowledged that its list was not all inclusive.[13] At oral argument in the case before us, counsel relied upon decisions discussing "pronouncement" under the former statutes to argue that an unsigned journal entry setting forth the general terms of the court's decision, although served on the parties' attorneys, did not qualify as an "announcement." This court's decision today rejects that argument.

Thus, my first point is that the old term "pronouncement" and the new term "announcement" are not synonymous. "Pronouncement" occurred when the court or judge orally pronounced judgment in open court. "Announcement" can occur in or out of court. It includes pronouncements, but also contemplates other means of communication.

## PREMATURE MOTION
## FOR NEW TRIAL

As the court's opinion correctly observes, our decision in *Macke v. Pierce*[14] appears to have prompted the Legislature to provide a savings clause for some motions for new trial filed before the entry of judgment. The Legislature evidently recognized that a potential trap existed where a decision was clearly made but for some reason the entry of a judgment was

---

[10] See 2004 Neb. Laws, L.B. 1207, § 3.

[11] Neb. Rev. Stat. § 25-1144.01 (Reissue 2008).

[12] See *State v. Brown*, 12 Neb. App. 940, 687 N.W.2d 203 (2004).

[13] *Id*.

[14] *Macke v. Pierce*, 263 Neb. 868, 643 N.W.2d 673 (2002).

delayed. The Legislature had already enacted a savings clause for notices of appeal filed after announcement of a decision but before the entry of judgment. And it clearly wanted to provide a similar savings clause for a motion for new trial.

But a premature motion for new trial is still possible. If the motion is filed before the "announcement" of the verdict or decision, the savings clause does not apply.[15] And our decision in *Macke v. Pierce* would still dictate that such a motion is a nullity.[16]

## CAUTION TO PRACTITIONERS

As I have explained, "announcement" of a decision can occur in many ways. Some of these ways may not be apparent on the trial court's record.

Appellate courts cannot ignore a question of whether the savings clause applies. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[17] Thus, where a motion for new trial is filed before the "entry" of judgment, an appellate court will examine the record to determine whether an "announcement" of a decision occurred before the filing of the motion.

If the motion was filed before any announcement, the motion will be deemed void. Thus, in many instances, the time for taking an appeal will not be tolled by the motion for new trial. And this unfortunate circumstance may not be discovered until it is too late. It is well settled that an untimely motion for new trial is ineffectual, does not toll the time for perfection of an appeal, and does not extend or suspend the time limit for filing a notice of appeal.[18] Consequently, a premature motion for new trial can easily result in the irrevocable loss of the right to appeal.

It is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate

---

[15] See § 25-1144.01.

[16] See *Macke v. Pierce, supra* note 14.

[17] *Becerra v. United Parcel Service*, 284 Neb. 414, 822 N.W.2d 327 (2012).

[18] *Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013).

court will affirm the lower court's decision regarding those errors.[19] Because the appellant has the duty to present a record supporting the assigned errors, he or she necessarily bears the burden of presenting a record demonstrating that the appellate court has jurisdiction.

If the party appealing from a judgment after the denial of a motion for new trial is relying upon the savings clause of § 25-1144.01, the party must ensure that the "announcement" of decision appears in the record. If the trial court's record does not include it, the party seeking to appeal must make sure that it properly becomes part of the record. And the party must then make sure that it is included in the record presented to the appellate court.

## CONCLUSION

The savings clause of § 25-1144.01 is a useful tool to avoid losing the right to appeal. But it has no effect when a motion is filed before announcement or where the record does not show an announcement before entry of judgment. I remind the practicing bar that failing to ensure that such an announcement is included in the record might result in an irrevocable loss of an appeal, which in turn is likely to lead to unpleasant consequences.

---

[19] *Centurion Stone of Neb. v. Whelan*, 286 Neb. 150, 835 N.W.2d 62 (2013).

---

JOHN HUGHES, APPELLANT, V. SCHOOL DISTRICT
OF AURORA, NEBRASKA, A NEBRASKA
POLITICAL SUBDIVISION, APPELLEE.

___ N.W.2d ___

Filed February 6, 2015.    No. S-13-1144.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was